UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN CARLO MANIGAULTE,

                Plaintiff,

                **REPORT AND**
                **RECOMMENDATION**
      -against-                CV 08-1853 (JS) (WDW)

C.W. POST OF LONG ISLAND UNIVERSITY,

                Defendant.
------------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

      Before the court is plaintiff *pro se* John Carlo Manigaulte's motion for leave to file a Second Amended Complaint, *see* Docket Entry ("DE") [28], which has been referred to the undersigned for report and recommendation. For the reasons stated herein, it is recommended that plaintiff's motion be granted in part and denied in part.

## BACKGROUND

      As this case has been the subject of two prior orders regarding the sufficiency of plaintiff's claims, familiarity with the underlying facts of his complaint is assumed. Generally, plaintiff was employed by C.W. Post of Long Island University ("LIU") as an adjunct professor from September 1999 through September 2006. DE [41]. Plaintiff's appointment was not renewed in 2006, and he subsequently filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 13, 2006 alleging discrimination based on disability. DE [6] at page 29, DE [41].

      Plaintiff filed a complaint on May 7, 2008 seeking relief pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). Docket Entry ("DE") [1]. Plaintiff filed motions for leave to proceed in forma pauperis and for

appointment of counsel.  DE [2], [3].  In a Memorandum and Order dated May 28, 2008, District Judge Seybert granted Plaintiff's motion to proceed in forma pauperis, denied without prejudice Plaintiff's motion to appoint counsel, and *sua sponte* dismissed plaintiff's Title VII claim against defendant LIU, as well as his claims against the individually named defendants.  *See* M&O of 5/28/08, DE [5].  While dismissal of the claims against the individually named defendants was with prejudice, plaintiff was given leave to amend his Title VII claims against LIU.  *Id.*

On June 30, 2008, Plaintiff filed an Amended Complaint.  DE [6].  In a Memorandum and Order dated September 30, 2008, Judge Seybert found that plaintiff sufficiently alleged an ADA claim against defendant LIU, but dismissed his Title VII claims with prejudice.  M&O of 9/30/08, DE [16].

On November 25, 2008, Plaintiff filed a motion to amend his Complaint for the second time.  Plaintiff now seeks to further amend his Amended Complaint to include three additional claims: "(a) that LIU's required First Year Composition ("FYC") program openly discriminates against persons with learning disabilities in that two supervisors of the program have refused to even briefly consider the ways in which their "required program" might be modified by them or by others to assist learning-disabled persons, (b) that when Plaintiff brought to his supervisors' attention the discriminatory effects of the FYC programs' pedagogical requirements and classroom practices, they retaliated by terminating the Plaintiff's employment, and (c) that an employer cannot discharge an employee when such discharge is contrary to a clear mandate of public policy."  DE [28].  In an Order dated March 16, 2009, the Court referred Plaintiff's motion to amend to the undersigned to report and recommend whether the motion should be granted. DE [40].

2

# DISCUSSION

Rule 15(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "a party may amend [its] pleading . . . by leave of court," and that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In making its determination, the court considers factors such as undue delay, prejudice to the defendants, and futility of the proposed amendments. *See Foman*, 371 U.S. at 182; *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998); *Harrison v. NBD, Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998). Although amendments are generally favored because "they tend to facilitate a proper decision on the merits," *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998) (citation omitted), ultimately, "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co.v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (*citing Foman*, 371 U.S. at 182).

It is well settled that pleadings submitted by *pro se* plaintiffs may be held to "less stringent standards than [those applicable to] formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972). The court must "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.,* 202 F.3d 530, 536 (2d Cir. 1999) (quotations omitted).

The party opposing an amendment has the burden of proving that leave to amend would be futile or prejudicial. *See Blaskiewicz*, 29 F. Supp. 2d at 137-38; *Harrison*, 990 F. Supp. at 185. "In making this determination, the court should not consider the merits of a claim or defense on a motion to amend unless the amendment is 'clearly frivolous or legally insufficient on its face.'" *Blaskiewicz*, 29 F. Supp. 2d at 138 (*quoting Northbrook Nat'l Ins. Co. v. J&R*

3

*Vending Corp.*, 167 F.R.D. 643, 647 (E.D.N.Y. 1996)). Where leave to amend is opposed on the grounds of futility, "the appropriate legal standard is whether the proposed amended complaint fails to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Estate of Ratcliffe v. Pradera Realty Co.*, 2007 WL 3084977, at *4 (E.D.N.Y. Oct. 19, 2007). "On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations as true." *Id.* at *5 (citation omitted). Plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "'If the [movant] has at least colorable grounds for relief, justice . . . require[s]' that the court grant leave to amend a complaint." *Blaskiewicz*, 29 F. Supp. 2d at 138 (quoting *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y. 1992) (additional citations omitted)).

Defendant opposes the motion on the grounds of both futility and prejudice. Many of the arguments raised by defendant address the validity of *any* claim plaintiff may have under the ADA, including that previously allowed by Judge Seybert. The referral here does not encompass a review of the claim previously allowed, and the court will not consider arguments made against that claim. As to the proposed amendments, defendant argues that plaintiff fails to state a cause of action and that the retaliation claim was not raised in plaintiff's EEOC complaint and thus cannot be made here.

In his prior pleadings, plaintiff has alleged that he is disabled, and that defendant violated the ADA by discriminating against him because of his disability. This current pleading, however, shifts the focus to defendant's treatment of learning disabled students, expanding on an argument made briefly by plaintiff in his Amended Complaint. *See, e.g.,* Am. Compl. at 33 (referencing discussions with supervisors regarding "their 'one-size-fits-all' strategy even though

4

it might adversely impact disabled persons (e.g., students as well as instructors!)"(emphasis in original)).[1]

**Proposed Claim 1**

Plaintiff seeks to add a cause of action "that LIU's required First Year Composition ("FYC") program openly discriminates against persons with learning disabilities in that two supervisors of the program have refused to even briefly consider the ways in which their 'required program' might be modified by them or by others to assist learning-disabled persons Plaintiff claims that the 'process model of writing' discriminates against learning disabled students." DE [28]. The undersigned recommends that plaintiff's motion to add this purported cause of action be denied.

At the outset, the court notes that plaintiff has not alleged sufficient facts to invoke the jurisdiction of the federal courts. Federal courts are confined "to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright,* 468 U.S. 737, 750 (1984). To invoke the judicial power of the federal court, plaintiff must satisfy three elements: "[f]irst, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, the injury and the 'conduct complained of' must be causally related; that is, the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." *L.A.M. Recovery, Inc. v. Department of Consumer Affairs,* 377 F. Supp. 2d 429, 437 (S.D.N.Y. 2005) (internal quotation marks and citation omitted), *aff'd,* 184

---

[1]Plaintiff presents his proposed additional claims by themselves, not as a single pleading incorporating his claims in the Amended Complaint. Given that plaintiff is acting pro se, the court will treat these proposed causes of actions as additions to the Amended Complaint, not a replacement of that pleading.

Fed.Appx. 85 (2d Cir. 2006). In his current submission, plaintiff fails to allege any concrete and particularized injury in fact, and any harm he alleges is both conjectural and hypothetical. Thus the undersigned finds that plaintiff has not properly invoked this court's jurisdiction.

Even if plaintiff were able to provide facts demonstrating some concrete injury, his proposed cause of action would still fail. Reading this claim liberally, it appears that plaintiff is asserting a claim of discrimination by defendant against defendant's learning disabled <u>students</u> pursuant to Title III of the ADA. Simply put, plaintiff does not have standing to bring a claim on behalf of learning disabled students. *See, e.g., Adams v. Tennessee,* 70 Fed.Appx. 795, 796 (6th Cir. 2003)(therapist lacked "standing to assert the rights of individuals covered by the ADA"). There is a "general prohibition on a litigant's raising another person's legal rights." *Allen,* 468 U.S. at 751. Plaintiff has not "identified any obstacle preventing individuals with disabilities from asserting claims on their own behalf, nor has he shown any special relationship with those rights he seeks to assert." *Adams,* 70 Fed.Appx. at 796 *(citing Caplin & Drysdale, Chartered v. Unites States,* 491 U.S. 617, 623 n. 3 (1989)). As plaintiff does not have standing to bring a claim under Title III of the ADA on behalf of learning disabled students, an amendment allowing such a cause of action would be futile.

To the extent plaintiff may be asserting an "associational discrimination claim" under the ADA, that attempt also falls short. Under Title I of the ADA, an employee may not be discriminated against by his employer "because of the known disability of an individual with whom the [employee] is known to have a relationship or association." 42 U.S.C. §12112(b)(4). Amending plaintiff's complaint to add a Title I claim alleging associational discrimination would be futile "because Title I of the ADA does not allow relief for a teacher alleging an adverse employment action resulting from 'advocacy' on behalf of his disabled students."

6

*Valenti v. Massapequa Union Free Sch. Dist.,* 2006 WL 2570871, at *14 (E.D.N.Y. Sept. 5, 2006).

**Proposed Claim 2**:

In his second proposed cause of action, plaintiff claims "that when Plaintiff brought to his supervisors' attention the discriminatory effects of the FYC programs' pedagogical requirements and classroom practices, they retaliated by terminating the Plaintiff's employment." DE [28]. Plaintiff does not, however, indicate what law defendant may have violated by its alleged retaliatory conduct.

Plaintiff has not alleged that defendant, a private university, is a state actor for the purposes of a First Amendment claim under 42 U.S.C. §1983. Even if he had made allegations that defendant is a state actor, a First Amendment retaliation claim would not be viable since plaintiff did not speak "as a citizen on a matter of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006). It is clear that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Specifically, teachers who complain to their superiors on behalf of students are speaking in their official duties as educators and the complaints are not protected speech. *See Woodlock v. Orange Ulster B.O.C.E.S.,* 281 Fed.Appx. 66, 68 (2d Cir. 2008); *Felton v. Katonah Lewisboro Sch. Dist.,* 2009 WL 2223853, at *6 (S.D.N.Y. July 27, 2009); *Rodriguez v. International Leadership Charter Sch.,* 2009 WL 860622, at *3 (S.D.N.Y. Mar. 30, 2009).

The court will next address whether plaintiff's proposed amendment states a cause of action for retaliation under Title V the ADA, which prohibits discrimination against any individual "because such individual has opposed any act or practice made unlawful by this

7

chapter. . ." 42 U.S.C. §12203(a). Reading the proposed cause of action liberally, plaintiff is claiming that he was retaliated against after he complained to his superiors on behalf of learning disabled students at the university. The court must first determine whether plaintiff was required to raise this issue in his EEOC complaint.

A. Administrative Exhaustion

Defendant argues that plaintiff's claim of retaliation is barred for failure to exhaust administrative remedies since he did not present the claim in his complaint to the EEOC. "Whether an ADA claim must first be presented to an administrative agency depends on which precise title of the ADA the claim invokes." *McInerny v. Rensselaer Polytechnic Inst.,* 505 F.3d 135, 138 (2d Cir. 2007). A claim pursuant to Title I, which prohibits employment discrimination, requires the claimant to file a charge with the EEOC, while a claim pursuant to Title III, which prohibits discrimination in the full and equal enjoyment of services, facilities, privileges, or accommodations of any place of public accommodation, does not require administrative exhaustion. *Id.* Here, plaintiff's proposed claim arises under Title V of the ADA. "Title V retaliation claims in the employment context require the same procedures as those under Title I, while retaliation claims relating to public accommodations follow Title III. Thus, if Title III does not require administrative exhaustion, Title V claims predicated on asserting one's rights under Title III require no exhaustion either." *Id.* (internal citation omitted). Thus, the key issue is whether plaintiff's Title V claim is predicated on Title I or Title III of the ADA.

Here, plaintiff claims that he objected to acts of the defendant that allegedly discriminated against learning disabled students in violation of Title III of the ADA, and that defendant retaliated against him because he raised those objections. Accordingly, the procedures

8

established for Title III violations should be applied as plaintiff claims to have suffered retaliation for objecting to acts or practices which violate Title III. *See Cable v. Department of Dev'l Serv.,* 973 F. Supp. 937, 940 (C.D. Cal. 1997) (Title II case). As the *Cable* court noted, the legislative history of the ADA supports this view, as the House of Representatives Committee Report stated that §12203(c) of Title V "provides the same remedies and procedures for victims of retaliation and coercion as in the underlying title. For example, an individual who was retaliated against in an employment discrimination complaint would have the same remedies and procedures available under [Title I] as an individual alleging employment discrimination." H.R. Rep. No. 101-485, pt. III, at 72 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 495.

As plaintiff claims that he was retaliated against for objecting to defendants' alleged failure to provide learning disabled students with equal access to services, his Title V claim invokes Title III of the ADA. Since a Title III claim does not require administrative exhaustion, his failure to raise the claim in his EEOC complaint does not bar amendment here.

B.  Viability of an ADA Retaliation Claim

To establish a Title V retaliation claim, plaintiff must show "that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir. 2002). "Plaintiff need not be disabled within the meaning of the ADA to proceed on a theory of retaliation for engaging in protected activity under the ADA." *Detullio v. Village of Massena,* 81 F. Supp. 2d 397, 408 (N.D.N.Y. 2000) (*citing Muller v. Costello,* 187 F.3d 298, 311 (2d Cir.1999)); *see also Barber v. Saint Gobain Performance Plastics Corp.,* 2006 WL 2662853, at *6 (D. Vt. Sept. 14, 2006) (plaintiff does not have to prove he is a "'qualified

9

individual with a disability' in order to succeed with a retaliation claim under the ADA").

The court finds that plaintiff has adequately pled this cause of action. Regarding the first element of a Title V retaliation claim, complaints to supervisors are considered protected activity under the ADA. *See Felton,* 2009 WL 2223853, at *6. "[T]he Second Circuit has held that a non-disabled individual who files a complaint of disability discrimination is engaging in activity protected under the ADA 'so long as [s]he can establish that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer" violated the ADA. *Ragusa v. Malverne Union Free Sch. Dist.,* 582 F. Supp. 2d 326, 347 (E.D.N.Y. 2008)(*quoting Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir. 1999)). To the extent plaintiff complained that the defendant was discriminating against its learning disabled students, he engaged in protected activity under the ADA.

As to the second and third required elements, plaintiff has alleged both that his employer was aware of his protected activity, and that he was not reappointed to his position. Failure to re-appoint plaintiff as an adjunct professor may be considered an adverse employment action. *See generally Arrocha v. City Univ. of NY,* 2004 WL 594981, at *4 (E.D.N.Y. Feb. 9, 2004). Although the alleged causal connection between the protected activity and defendant's decision to not reappoint plaintiff to his position may be tenuous at best, it is at least plausible, thus rendering the proposed cause of action sufficiently pled for this motion. Accordingly, the undersigned recommends that plaintiff be allowed to amend his complaint to add a retaliation claim under Title V of the ADA.[2]

---

[2]Plaintiff is advised, however, that should Judge Seybert adopt this Report and Recommendation and allow this claim to move forward, plaintiff will not be allowed to seek discovery regarding learning disabled students at the university as such discovery will not be relevant to his claim that defendant retaliated against him for his complaints.

**Proposed Claim 3:**

Plaintiff's third proposed claim is that "an employer cannot discharge an employee when such discharge is contrary to a clear mandate of public policy." Plaintiff has not articulated any federal law supporting a cause of action for wrongful discharge in violation of public policy. The court looks to the law of the state in which the action arose, New York, to see if plaintiff has stated a viable claim under that state's laws.

Under New York law, "an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Baron v. Port Auth. of NY & NJ,* 271 F.3d 81, 85 (2d Cir. 2001)(*quoting Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333 (1987)). Here, plaintiff has not alleged any facts to suggest that he was not an employee at will. *See generally Reddington v. Staten Island Univ. Hosp.,* 511 F.3d 126, 137-38 (2d Cir. 2007). It is clear that "New York law does not recognize causes of action for wrongful termination for employees at will." *Howard v. Klynveld Peat Marwick Goerdeler,* 173 F.3d 844, 1999 WL 265022 (2d Cir. 1999); *see also Rohlehr v. Brookdale Univ. Hosp. & Med. Ctr.,* 390 F. Supp. 2d 207, 211 (E.D.N.Y. 2005) ("New York does not recognize a common law cause of action for abusive discharge" (citation omitted)). Nor does New York law provide "an exception based on the general notion of public policy." *Rohlehr,* 390 F. Supp. 2d at 211 (citation omitted). The undersigned finds that plaintiff has not articulated a viable cause of action for wrongful termination in violation of public policy, and recommends that the motion to amend to include such a claim be denied.

The court has also considered whether plaintiff has stated a cause of action under New York's whistleblower statute and has determined that no such claim exists. Under New York Labor Law §740, an employer may not retaliate against an employee who reports a violation that

"creates and presents a substantial and specific danger to the public health or safety" or "objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation." N.Y. Labor Law §740(a), (c). The law is triggered only by a violation that creates a substantial and specific danger to the public health. *See Rohlehr,* 390 F. Supp. 2d at 210 (*citing Remba v. Federation Employment & Guidance Serv.,* 76 N.Y.2d 801 (1990)). Taking plaintiff's allegations as true, his concerns about the impact of the university's "pedagogical requirements and classroom practices" on learning disabled students do not implicate public health and safety concerns and thus, he cannot state a cause of action under Labor Law §740.[3]

## CONCLUSION

For the reasons set forth above, it is recommended that plaintiff's motion to amend to add the first and third proposed causes of action be denied. It is further recommended that his motion to amend to add the second cause of action be granted as a claim for retaliation under Title V of the ADA.

## OBJECTIONS

A copy of this Report and Recommendation is being sent by mail to plaintiff and by electronic filing to counsel for the defendant on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 10 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir.

---

[3]To the extent this proposed amendment can be read to re-state a cause of action under the ADA, it is unnecessary since his Title I claim under the ADA survived the previous motions to dismiss.

1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
August 17, 2009

                                                           /s/ William D. Wall
                                                         WILLIAM D. WALL
                                                         United States Magistrate Judge