**LONG ISLAND UNIVERSITY**

(516) 299-2504
FAX (516) 299-2072
www.liu.edu

July 25, 2006

OFFICE OF PERSONNEL AND LABOR RELATIONS
UNIVERSITY CENTER
700 Northern Boulevard • Brookville, New York 11548-1327

Dr. John C. Manigaulte
165 Andito Avenue
Kings Park, NY 11754

Dear Dr. Manigaulte:

I received your letter and enclosed CD today. I spent considerable time reading your letter and was deeply moved by its contents. Under the law, employers are supposed to make reasonable accommodation for employees with disabilities, provided the disability does not prevent the employee from performing the essential functions of the job. Your course evaluations suggest to me that you have met that challenge.

By earning a Ph. D., it is clear to me that you can and have overcome obstacles to achieve success in your chosen field. Based on just hearing your side of the story, I do not understand why Ms. Kremer would deny you future workloads. While there may be philosophical differences in the way you teach and the way she wants you to teach, the bottom line for me is that the students learn in your classrooms. From observations of your teaching, it appears that they do learn in your class. I am also not sure that Ms. Kremer is aware of our obligation to make reasonable accommodation now that she knows you have a disability. The best teacher I ever had in college was a history teacher who was blind. In order to get a good grade in his class, you had to participate in class discussions and he recognized us by our voices. That is one class where I was glad I talked too much. Obviously, City College found a way to accommodate his disability. I, too, suffer from some disability due to 20 years of military service, which robbed me of some of my hearing. Sometimes, routine conversations become a struggle to hear.

I will investigate this matter further to try and find out what the difficulty has been between you and Ms. Kremer. You sending a copy of the letter to Edmund Miller will help since I will be speaking to him as well as Ms. Kremer. While I can not promise anything at this point, I will get back to you after I have made a preliminary inquiry into the things that you outlined in your letter. Good luck in the meantime.

Sincerely,

Howard J. White
Associate Vice-President for
Labor Relations & Affirmative Action

Cc: Dean Hill-Miller



**LONG ISLAND UNIVERSITY**

(516) 299-2504
FAX (516) 299-2072
www.liu.edu

August 3, 2006

OFFICE OF PERSONNEL AND LABOR RELATIONS
UNIVERSITY CENTER
700 Northern Boulevard • Brookville, New York 11548-1327

Dr. John C. Manigaulte Ph.D.
165 Andito Avenue
Kings Park, NY 11754

Dear Dr. Manigaulte:

This is a follow-up to my previous letter of July 25, 2006. I contacted Dean Hill-Miller to get some preliminary information from her about the writing program at C. W. Post. Dean Hill-Miller told me that Belinda Kremer is on vacation. She will also be on vacation until August 20, 2006. I will also be on vacation next week when Ms. Kremer returns. Therefore, I can not proceed to investigate your complaint until I have both Ms. Kremer and the dean available for me to speak to. I will also speak with Edmund Miller about this as well.

I told Dean Hill-Miller that I needed to know what she considers to be the "essential" parts of the writing program and whether or not accommodations could be made that would allow you to use your methods in teaching the students. This is obviously an academic decision. Once I speak to both ladies, I will give you an update on the status of my investigation of this matter.

Thank you for your understanding in this matter.

Sincerely,

Howard J. White
Assoc. VP for Affirmative Action

JOHN CARLO MANIGAULTE, PH.D.

RECEIVED
AUG - 7 2006
L.I.U.
PERSONNEL & LABOR RELATIONS

August 4, 2006

Howard J. White, Associate Vice-President for
Labor Relations & Affirmative Action
University Center
700 Northern Boulevard
Brookville, New York 11548-1327

Dear Doctor White:

Thank you very much for your encouraging letter of July 25, 2006. From what you wrote to me I can tell, rather instantly, that you are a person of great moral stature.

I am honored (and quite humbled) to feel it necessary to appeal to someone whose spiritual views are exemplary. The fact that you thoroughly appreciated a blind instructor while you were working hard in college suggests to me that you have, perhaps, higher spiritual values than many folks I have come across rather recently. Sadly, it seems to me that quite a few of our young people today would probably say that having a blind instructor would be "an unnecessary burden." The youngest generation on the block *seems to me* to be a little bit "too practical" for their own spiritual good. But I'm not sure we should blame them fully for their goal-oriented views. Perhaps they've survived the rigors of youth in their day and age by being profoundly "practical." I don't know.

As for what troubles Belinda Kremer, I suspect that she truly does not understand my disability. I cannot imagine that her heart has turned to stone, though I am sometimes drawn in that direction out of pure frustration. I told her of my disability during our one-hour meeting and she didn't ask one question of me regarding it. I invited her (in an e-mail) to visit my class, unannounced, at any time she cared, and she never showed up, to my knowledge. Perhaps she lingered just outside the door, listening to me teach, I don't know. I believe I encouraged her to do just that in one e-mail. In the end, I wanted to prove to her that my students were working hard, that they were learning something valuable for their individual futures, that I managed my class with professional aplomb and dignity (hopefully I am dignified in my approach, I *do* have a sense of humor and I *do* encourage laughter to "lighten the load," sometimes).

I suspect that Belinda Kremer just assumes that I'm a stubborn clod. She has to repeat things to me because I really *do need* to establish a deeper grasp of relationships before I can discover meaning. Without this knowledge, I become lost in words that possess little meaning to me and ideas that are not grounded in anything substantial, anything practical. In other words, I am very easily led astray, my

attention wanders. I can't really teach the way she suggests. I can't become her to do my job well. I can't manage my class the way she manages hers.

I have to do things that keep me continually focused on the task at hand. I have to understand that task and I have to manage my class in a way that minimizes the possibility of too much "digression." I have to balance things very carefully, to maintain student interest and to placate my *own* ungovernable propensity "to sometimes wander."

I know that I probably frustrate some people. I try to minimize this possibility. The fact that you truly enjoyed taking a class with a blind instructor suggests that you are not easily frustrated, that you look for and find "the gold" that everyone seeks. In other words, you do not sift through dirt looking for dirt. But not to get too far off course, let me say that I found your letter quite comforting.

May God continue to bless you and lead you down that narrow path, that road "less traveled." The world could certainly use leaders with insight, vigor, and compassion. I'm sure that your determination, whatever it shall be, will be exemplary. If I must seek employment elsewhere, then it is God's will, all bases have been covered. I cannot truly function as I once had hoped.

In any event, it has been both an honor and a privilege to communicate with someone of your stature. You remind me of my Aikido instructor, a man of inestimable patience, insight, and compassion. He, too, served in the military, and he, too, looks deeper into the mysteries of this life. I have learned more from him than I can ever hope to retain. Such are the blessings of insight and the burdens of imperfection, which I know so well.

Sincerely,

John Carlo Manigaulte
Adjunct Professor